Good morning, Your Honor. My name is Sochet Che. I'm sorry I have a little head cold today and I apologize if I sound kind of strange today. In this case, we are asking the Court to write down the Board's decisions on primarily two grounds that we feel that the Board has erred and the immigration judge has erred. Great is the issue of probability. This issue has been decided across the United States in various cases before the immigration judges and also in some courts of appeal. And it seems that the judges and the Board have been kind of lax in terms of their approach in approaching this issue. We're talking about the death penalty in immigration law being meted out here. If someone has been found to submit a frivolous asylum application, they are forever barred from any relief whatsoever except for withholding. And the Board, fortunately, the Board, after receiving some circuit decision from other circuits, which I was involved in one case in the 11th Circuit in Mingskid, the Board has issued a decision called Matter YL, which basically outlines what it expects the immigration judge to do in tackling this issue. This is really the heart of this case. And I have a question. On what basis did we adopt a new rule requiring the immigration judge to give direct notice of the consequences of filing a frivolous appeal? There is written notice on two written documents. If we decided to adopt such a rule, what would be the contours of that rule? Well, Your Honor, in Matter YL, the Board discussed about, and the immigration judge in that case actually had counsel advise on a record that he advised his client of the warnings and consequences of filing a frivolous claim. And you're claiming the immigration judge should have had to do it? At the least, Your Honor. If you're dealing with something of this magnitude, you should ‑‑ the parties should be well aware of the consequences and the rules of engagement in this situation. But isn't that a legislative function, or at least a function for the executive to do since they run the immigration department? I'm sorry, Your Honor? Isn't that something which the executive should do by regulation? Are you suggesting that we decide as a policy matter that what in YL was permissible be made mandatory by this Court? I do, Your Honor. I think Matter YL is in the right direction that the Board has taken in that the Board ‑‑ In YL, it was permissible. This was something that the Board said can be done, not has to be done. What you're saying is the Ninth Circuit knows more about this than the Board of Immigration Appeal, and because of the seriousness of the consequences of a finding of frivolity, this Court should make a ruling in the Ninth Circuit that what is permissible under YL is mandatory henceforth. Yes, Your Honor. I believe in the gravity of the situation in terms of ‑‑ if someone is dealing with the death penalty, they should be warned. I mean, if you're someone in another context in a criminal case, they're given incredible amounts of waivers and appeals and things of that nature. In the immigration court, all you have is one waiver that's written on the I589, and then in this case, the Court didn't even alert the respondent and his lawyer until the oral decision was made. At a minimum, he should have said, look, counsel, I've got problems in this case. I think I'm going to find that this is a frivolous asylum application, and here's why, and do you want time to consider to respond to this, or do you want to consider it now? He never gave that opportunity to the respondent and his attorney. In fact, what the judge did was issue an oral decision, and that's when it came to light the first time that this was a frivolous finding of the asylum application. And this is the second problem that we have in the board decisions and also in IJ's decision, is not only were not adequate notices given, second, that this issue was not alerted, and that is actually inviolate of the decision issued by this Court earlier, and I believe it was Zarr, where the Court has said the respondent should be accorded sufficient opportunity to respond to the frivolous finding. In this case, the respondent was never given that opportunity. Third, Your Honor, I hope that you received our letter. Yes, we did get your 8J, whatever it is, 8J letter. Yes, Your Honor. 28J letter. Yes, Your Honor. And your position is that the issue is now moot? Yes, Your Honor. I believe Luciano is a very logical and a cogent decision that addresses this issue that maybe, although not a presidential decision, could be a guidance to the courts on how to deal with this issue. It seems quite apparent, if someone is not eligible for asylum in the first place, how can they be found to have submitted a frivolous asylum application? If you're not eligible for the benefit, then why frivolous finding? In Luciano, it's very clear it was an Indonesian asylum claim where the person was time barred and she had essentially lied about some situation regarding past persecution, which turned out to be incorrect. And the court in that case struck down, the Third Circuit struck down the frivolous finding. And what's important in this case is that the Third Circuit struck down this finding based on the fact that, looking at the tally of circumstances by logic, this person is a married to a U.S. citizen. And by striking down, by finding someone frivolous when they are not eligible, what are we doing? Why are we taking, why are we giving a double punishment in this case? And this takes... Isn't there a regulation that says that defining what is frivolous as being something which is manufactured and false? Yes, Your Honor. Why does it stop being manufactured and false because it's ineffective? If it's what, I'm sorry? If it's late filed. I mean, it's still manufactured and false, isn't it? Well, Your Honor, he did lie about this date of entry, which goes to the heart whether he's eligible for asylum. But it's our contention from the record that everything else was credible in terms of respect. And if you look at the record, it seems that the immigration judge was heading toward a grant until this IBIS check showed up that he was arrested, and so therefore... Arrested under another name. Yes, Your Honor. But that does not change the fact that he was persecuted in the past. Bottom line is that he may have lied in order to try to get asylum, but if he's not eligible in the first place, he should not have been found frivolous and filed an application. The second issue of major concern for practitioners in this area is how the board is basically on a blanket policy treating these motion reopens. In this case, the respondent filed a motion to reopen based on validity, on the basis to show that he was married to a U.S. citizen, and therefore he's eligible to adjust. Now, this court in Volna has struck down the regulation of the immigration service, whereby arriving aliens were not afforded the opportunity to adjust. And what the BI is doing is that on its blanket policies, denying these motions reopens, motion to remand on the basis that they believe, what they say, that they don't have jurisdiction over the adjustment status. Well, that's not what the petitioner is arguing for. The petitioner is arguing for the motion to reopen so that the proceedings can be remanded, so that the court can monitor the adjustment of status before CIS. And by issuing this decision in this manner, the respondent has a final order of deportation which subjects him to removal if that stays in that issue, and then if CIS, if he is removed from the United States, CIS loses jurisdiction over the case. And what the BI is misunderstanding is that they have the power to reopen the case, to remand the proceeding back to the immigration judge, and the immigration judge in appropriate cases sometimes can terminate proceedings to allow for CIS to have a full jurisdiction to take a look at this matter. And what the board is doing is basically violating the court decision in Volna a couple years ago where the circuit has struck down the regulation. It's basically thwarting the ability of the petitioner to file for adjustment of status, because if he has a final order and he's going to be removed, how is this adjustment application going to be adjudicated, or if he's in custody? Also, the board is violating its two-precedential decision, Velarde and Garcia. In those decisions, the board has made a policy that in the Velarde's context, if someone's married to a U.S. citizen, there is a tremendous amount of evidence to show that the person has a good marriage. The court has reopened the proceeding, remanded it, and let the immigration judge take a look at the matter. The board, in denying its motion to reopen, has violated that ruling, its own ruling, Velarde and Garcia. You have less than a minute to respond. Do you want to save it? I'm going to save it, Your Honor. Thank you very much. Good morning, Your Honors. For the record, Manuel Pallado for the Respondent, the Attorney General here. In this case, Your Honors, Mr. Khalilu, the petitioner, admitted that he lied on several occasions intentionally and knowingly for the purpose of gaining an immigration benefit in the form of asylum. He knowingly made representations for the purpose of gaining asylum that he believed he was not entitled to, and that's all it takes for a frivolous filing of asylum, and it also supports the court's adverse credibility determination. Assuming that what you say is true, the consequences of being accused and found guilty of filing a frivolous asylum application are very severe. That being so, why shouldn't we require the immigration judge to tell him directly, as opposed to simply the little written swears on these when he signs his asylum application and so forth? Why shouldn't we require the immigration judge to tell him directly? Well, Your Honor, I think that's controlled by statute and regulation. The regulation provides that the notice that's given, it requires the Attorney General to give the notice. The notice was given here. It was in the form of the ---- But statute doesn't say what constitutes adequate notice, does it? I'm sorry, I missed your question. Does the statute state what constitutes ---- There are two ways that could be resolved. The BIA has said in its list of requirements that there must be adequate notice. It didn't specify what constitutes adequate notice. So it's possible that we could, in our decision, determine what constitutes adequate notice, or we could remand and ask the BIA to expand on its decision in Y.L. or whatever it was, and ask whether checking the little boxes or providing information in the boxes complies with the purpose of Y.L. Well, Your Honor, I believe from the court's tone, I take it it's minimizing the impact of giving somebody written notice.  And anyway, it's not the court's tone, it's mine. There's a reason why these notices are written in the forms and explained and translated to the person signing the form. In this case, it's clear when he went for the asylum interview, there was an interpreter present. He read the notice to him, asked him if he understood it. He said yes, and he signed it. To me, that's adequate notice in many different contexts here. And as was noted previously, perhaps a preferable option here would be for the immigration judge to explicitly state another time verbally that here's the consequences. But in this case, he got three different forms of written notice. Three different forms? I believe so, Your Honor. Wasn't one of those forms a statement that was clouded or barred from view by another page? I'm not familiar. Why don't you tell me the three so I can take a note? I believe the first one was when he filled out an application for asylum before the asylum officer. Secondly, I believe he signed an oath during the course of the interview where the warning was given. And thirdly, when he resubmitted his asylum application to the immigration court after denial by the asylum officer, I believe that was the third time it was given. So my understanding is two of those three were written. And I believe the second one before the asylum officer, I believe the record says that it was translated and he was asked before he signed it, do you understand this, and he said yes. I didn't recall where it said that it was translated to him. Let me see if that's ---- I'm pretty sure that's in our brief, Your Honor. I'm trying to track that down. My recollection is that it was three times. It was at the very least two times. I'm sure about the two asylum applications that he signed. Once when he signed them in Form I-589, the written warning, and second when he signed the applicant's oath at his asylum interview. That's the one I'm referring to. Thank you. And we can check the record as to whether it was read to him or not. But under the heading of did he have ---- At no time was he told what the consequences were. I believe that's what all three of those warnings say, that if he files a crippled asylum application, that he's subject to certain penalties. Okay. Well, we'll check. But here, Your Honor, you know, perhaps it would have been a very conservative practice to verbally state by the immigration judge that these penalties were in place. But here, let me just be very clear that there is no issue that Mr. Kalilu lied intentionally. I understand that. Do you disagree with the Third Circuit decision that we just received that says it's moot? I did not receive that decision, Your Honor. No, I don't agree with it. In fairness, my office has been closed since Friday for moving it. That's okay. We just got it, and it may be in the mail for you. Yeah, that's where it always is.  It's not where you get it from the government that it's always in the mail. But anyway, we did get today a decision from the counsel submitted to us from the Third Circuit by Judge Alderson, which on a quick viewing seems to say that if the asylum petition is leaked or it's invalid, then the fact that it's frivolous, that issue's moot and has no consequence. Now, whether that's right or wrong, I think that's what the Third Circuit says somewhat. If you want to send us your view on it. I would be happy to, but based on your description, I mean, I would say, as Your Honor here made the point, that the fact is still the purpose of these regulations in the statute is to obtain truthful testimony, and applications for relief from the immigration courts. And this seems to be doing an end to run and saying, suddenly, if the relief that you lied to us about, it turns out you were never eligible for, then it's okay that you lied to us. It's not okay. It's just moot. Okay and moot is different. Moot here means okay, Your Honor. It doesn't mean okay. It means that it's, we don't consider it. It's still a bad thing. Oh, okay. I see your distinction. We haven't read it either. I mean, we just received it. So if you would read it in the next week, send us, you may not agree that that's what it says, or you may think we ought to reach an opposite result from the Third Circuit. Yes, sir. But I think here, it was very clear under the circumstances here that Mr. Khalilu was being questioned about his presentations, and he had a chance to explain them fully. Here we had a merits hearing at the end of it. It was revealed by the DHS that there was a hit on the fingerprints. There was a second, another hearing scheduled to discuss what the fingerprint check turned up. At this next hearing it was disclosed that he used a false identity with criminal authorities, that he lied about the date of his admission. And after that, there was a full hearing, the sole purpose of which was to give him a chance to respond to these presentations that he made to the court previously. And he was questioned by his attorney. Did you say X? Yes. Why did you say it? I mean, he basically admitted that I lied about my date of entry, because if I had given the true date, I would have been ineligible. So a friend of mine told me to lie. That's what I did. And it was to get the asylum benefit. He was asked about the criminal proceedings in Atlanta. He had previously told a court, I've never been arrested. Let me ask you one question on the other issue. Did the BIA decision say that we can't reopen and hold this case, because we don't have the authority to decide the underlying issue of adjustment of status, that that decision comes from CIS? Your Honor, all the interim reg says is two things. Number one, it clarifies that arriving aliens, like Mr. Kalilu, can ask for adjustment of status, even though they are arriving aliens in remote proceedings. Secondly, it says that the way you will exercise that option is to go to U.S.C.I.S., which is the main body which indicates these applications. And that's all it says. It stops right there. And what he was asking is that you consider holding your decision until CIS had decided, right? I'm sorry, by us you mean the immigration court? The BIA. Was that not what he was asking for? No. The way I read his brief is first he said we weren't asking for the immigration court to adjust his status. We just wanted him to hold this. That's what the motion to reopen said. The motion to reopen said I want to reopen my case and remand it to the court so I can adjudicate my status. Maybe I'm misreading it, but I understood him to say that he wanted the immigration court to adjudicate his status. That's how I read the brief that he sent to the board and the brief that he submitted to this court. In fact, in his brief to this court, I believe this page is 14 and 15. I believe on 14 he said we want that if you look at those two pages, he contradicts himself. And in one case he was saying we're not asking for adjudication. We want a continuance so CIS can adjudicate this. In the next page he says I believe that we want the immigration court to adjudicate it. I'm not sure the sequence there. But you're not stating that it still cannot reopen a case while a petition is pending with USCIS. You're not making that claim. The court could reopen a case pending a decision by USCIS. You're saying that he was asking reopening for a decision on the merits. Is that what you're saying? I believe that's correct. What I'm saying, Your Honor, is that there's no point in reopening a proceeding to allow the immigration court to adjudicate his status because the immigration court in light of the interim reg does not have that jurisdiction. I don't believe he was asking the other for the court to sit on its decision. But the fact is here he's subject to a final order of removal. And the timing here is something that if he applies to USCIS as the interim reg provides, then the timing of any removal and his interplay between that and the time to adjudicate the adjustment application, that could be dealt with by USCIS or the court in some way, I assume. How can it be dealt with with USCIS? Doesn't that have to be dealt with by the BIA holding the removal order until USCIS decides the adjustment of status? All I'm saying is that this will be triggered by him applying with USCIS. If and when that happens, then he can contact DHS about can you hold the execution of the removal order. I'm just saying in the first instance, I believe he has to go to USCIS because that's who has jurisdiction. He didn't go to USCIS in this case? I don't believe he's filed with USCIS yet. Still? It's not in the record that he has. I honestly don't know, Your Honor. But the immigration court can't assume that he's going to file with them and hold their case on that possibility. In the motion to reopen, he didn't say that he had filed with USCIS? I believe he attached his adjustment application to his motion to reopen. My understanding was that he was asking the immigration court to adjust his status. That's how I read it. Okay. Thank you. One minute. Well, if we take a little more of your time, we will let you go over a bit. Is that correct, that when you filed your motion to reopen, you were asking the BIA to decide the adjustment of status? No, Your Honor. What he was asking for is a motion to reopen so the proceeding could be remanded so the case could be continued to allow for CIS to adjust his case. Did you file anything with USCIS? I'm not sure he did or not, because I was his appellate counsel. He had a trial counsel who did all that work. I'm not certain of that, Your Honor. So you don't know what the motion to reopen said? I believe the motion to reopen is based on velarde, to explain that he's married to a U.S. citizen and that the case should be remanded back to the immigration service. And of course, when the regs came out, it's pretty clear that he's not entitled to adjust before an immigration judge. So the case then could be dealt with the immigration judge, where the case would be held in abeyance. Or the immigration judge could actually terminate proceedings and allow CIS to process the case. The real question, though, is how do we know he's ever going to file with USCIS? What is to hold in abeyance for? And that's what we don't know. Up until the regulation, it wasn't clear what you were supposed to do, is it? We weren't clear because when the case came out, until the regulation came out, it was all kind of subtle. And it appears now that the board has actually, in a meeting with AILA, liaison committees have said that they will not reopen proceedings or remand proceedings unless there's a joint motion. So basically there's a blanket policy to deny these motions to reopen remand unless there is a joint motion with the government. When was the new regulation issued? I don't remember exactly. I think it was, I believe it was around the summer of 2006, Your Honor, because the liaison meeting was around, I believe, around November of 2006. In order to hash out the issues relating to the regulation. It's just a weird situation. Basically the courts don't have jurisdiction, but the court can do something by allowing the, by staying in proceedings, allowing the respondent to file adjustment with CIS. And another issue I think that the court needs to understand, too, is that he can file for adjustment, but it cannot be processed until the I-130 is adjudicated. And that's the purpose of matter velarde. Velarde is allowed the case to be reopened so that the CIS has the opportunity to adjudicate the marriage petition. That's the basis of matter velarde. Matter Garcia says that if you're married before proceedings, then your entirety continues as a matter of law. But if you are married, proceeding is deemed that marriage is fraudulent, but if you invoke the inception showing that by clear and convincing evidence that the marriage, this is a good marriage, then the court can reopen proceedings and look at the marriage to grant a continuance to allow for the I-130 to be processed. That, I know for certain, the I-130 has been filed. Thank you, counsel. Thank you, Your Honor.
judges: Nelson, Reinhardt, Bea